UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JD1, JD2, and JD3,

                Plaintiffs,

vs.

CANISIUS COLLEGE, NATHAN HUCKLE,
WILLIAM MAHER, and DONOVAN GLAVIN,

                Defendants.

Case No. 1:21-cv-00521

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS FILED BY DEFENDANTS CANISIUS COLLEGE, NATHAN HUCKLE, AND WILLIAM MAHER**

WARD GREENBERG HELLER & REIDY LLP
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

ARGUMENT ........................................................................................................................1

    I.    SUBSTANTIAL PORTIONS OF DEFENDANTS' MOTION ARE UNOPPOSED ........................1

        A.  Plaintiffs Explicitly Withdraw Several Claims ....................................................1

        B.  Plaintiffs Abandon Several Additional Claims
            by Failing to Oppose Their Dismissal ...............................................................1

            1.  Plaintiffs' "Workplace Discrimination" Claims ..........................................2
            2.  Sexual Orientation Discrimination .............................................................2
            3.  Child Victims Act ........................................................................................3

    II.   PLAINTIFFS CONTINUE TO MISCONSTRUE THE NATURE OF A
         BREACH OF CONTRACT CLAIM ......................................................................................3

    III.  PLAINTIFFS CONCEDE THE DEFICIENCY OF THEIR CLAIMS FOR
         NEGLIGENT HIRING AND SUPERVISION ...........................................................................3

    IV.  JD1 AND JD2 DO NOT STATE VIABLE TITLE IX
         DELIBERATE INDIFFERENCE CLAIMS ..............................................................................4

        A.  The "Disfavored" Continuing Violation Doctrine Does Not Save JD1
            and JD2's Claims ...............................................................................................4

        B.  The Post-Assault Claims of JD1 and JD2 are Time-Barred as Well ....................6

        C.  Their Post-Assault Claims Must Be Dismissed for the Additional
            Reason that the College's Response to Plaintiffs' Reports Was Not
            "Clearly Unreasonable" .....................................................................................7

        D.  Their Pre-Assault Claims Fail Due to the Absence of any Actionable
            Triggering Event .................................................................................................7

    V.   JD3 FAILS TO STATE A TITLE IX RETALIATION CLAIM ................................................9

    VI.  PLAINTIFFS DO NOT PLAUSIBLY ALLEGE A TITLE IX
         "UNEQUAL TREATMENT" THEORY ..................................................................................9

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                        **Page**

*Abram v. Town of Cheektowaga Police Dep't*, 2020 U.S. Dist.
LEXIS 114325, (W.D.N.Y. June 29, 2020) ............................................................................... 1

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999) ........................................................... 9

*Deutsch v. JPMorgan Chase & Co.*, 2019 U.S. Dist. LEXIS 170221,
(S.D.N.Y. Sept. 30, 2019) ......................................................................................................... 2

*East v. Roosevelt Union Free Sch. Dist.*, 2020 U.S. Dist. LEXIS 138849,
(E.D.N.Y. July 31, 2020) .......................................................................................................... 2

*Hart v. Artus*, 2021 U.S. Dist. LEXIS 132962, (W.D.N.Y. July 16, 2021) ................................. 5, 6

*Irrera v. Univ. of Rochester*, 2016 U.S. Dist. LEXIS 203057,
(W.D.N.Y. May 23, 2016) ......................................................................................................... 6

*Kelley v. Ithaca Coll.*, 2019 U.S. Dist. LEXIS 102636,
(N.D.N.Y. June 18, 2019) .......................................................................................................... 6

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128 (2d Cir. 2016) .............................. 1

*McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275 (2d Cir. 2004) ........................................ 9

*Mendoza v. Cornell Univ.*, 2021 U.S. Dist. LEXIS 44937
(S.D.N.Y. Mar. 10, 2021) .......................................................................................................... 9

*Posso v. Niagara Univ.*, 518 F. Supp. 3d 688 (W.D.N.Y. Feb. 10, 2021) ................................. 7, 8

*Renner v. Chase Manhattan Bank*, 1999 U.S. Dist. LEXIS 978,
(S.D.N.Y. Feb. 3, 1999) ............................................................................................................ 4

*Roskin-Frazee v. Columbia Univ.*, 2018 U.S. Dist.
LEXIS 28937 (S.D.N.Y. Feb. 21, 2018) ................................................................................ 7, 8

*Sant v. Stephens*, 821 Fed. Appx. 42, (2d Cir. July 28, 2020) .................................................... 5, 6

*Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292 (S.D.N.Y. 2018) ............................................... 7

*Williams v. Amalgamated Transit Union Local 282*, 2017 U.S. Dist.
LEXIS 39761, (W.D.N.Y. Mar. 20, 2017) ................................................................................ 2

<u>ARGUMENT</u>

Little remains of the Complaint after plaintiffs' explicit withdrawal of certain claims, and their abandonment of others as reflected in Points I-III, below. And the few claims that plaintiffs do seek to address in their skeletal Opposition Memorandum nonetheless fail for numerous reasons described in Points IV-VI. The College defendants' motion to dismiss thus should be granted in its entirety, narrowing the surviving claims against the College to: (1) plaintiff JD3's Title IX "pre-assault" claim, incorporated within Count I; and (2) those portions of Count II asserting Title IX retaliation claims on behalf of JD1 and JD2.[1] *See* Dkt. 12-1 at 12, n.1.[2]

POINT I

SUBSTANTIAL PORTIONS OF DEFENDANTS' MOTION ARE UNOPPOSED

**A. Plaintiffs Explicitly Withdraw Several Claims**

Plaintiffs withdrew their Title IX claims against individual defendants Huckle and Maher; *all* their Title VII claims; and their negligence claim. Dkt. 22 at 2, 12. Dismissed on concession, therefore, are: (1) Counts I and II as against defendants Huckle and Maher; (2) Counts III, IV, VI, and IX to the extent they are based on Title VII; and (3) Count V in its entirety.

**B. Plaintiffs Abandon Several Additional Claims by Failing to Oppose Their Dismissal**

Plaintiffs have abandoned several additional claims, mandating their dismissal. *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 144 (2d Cir. 2016) ("we infer from [plaintiff's] failure to mention the claims that he had abandoned them"); *Abram v. Town of Cheektowaga Police Dep't*, 2020 U.S. Dist. LEXIS 114325, at *8 (W.D.N.Y. June 29, 2020)

---

[1] The College's choice not to challenge at the outset certain portions of Counts I and II in no way can or should be read as a concession that those claims have merit. Their viability will be addressed, post-discovery, on summary judgment.

[2] Page references in CM/ECF docket entries are to the docket page number rather than the document's original pagination.

(collecting cases) (same). As to yet others, plaintiffs ignore dispositive deficiencies in their pleading; ignoring the defect, however, does not cure it, and on this ground dismissal is warranted. *Deutsch v. JPMorgan Chase & Co.*, 2019 U.S. Dist. LEXIS 170221, at *14 (S.D.N.Y. Sept. 30, 2019) ("Plaintiff makes no attempt to address this argument in his opposition papers, and therefore concedes it"); *see also East v. Roosevelt Union Free Sch. Dist.*, 2020 U.S. Dist. LEXIS 138849, *61-62 (E.D.N.Y. July 31, 2020) (collecting cases).

Among the claims susceptible to dismissal on these bases are:

### 1. Plaintiffs' "Workplace Discrimination" Claims

Plaintiffs' explicit withdrawal of their Title VII claims dooms their New York State Human Rights Law claims as well. *See Williams v. Amalgamated Transit Union Local 282*, 2017 U.S. Dist. LEXIS 39761, *6 (W.D.N.Y. Mar. 20, 2017) ("Because Plaintiff abandoned her Title VII claim, it follows that Plaintiff also has abandoned her NYSHRL claim. This is so because 'claims brought under [NYSHRL] are analytically identical to claims brought under Title VII'"). Similarly, no support exists for plaintiffs' "workplace discrimination" claims, because they do not plausibly allege the existence of any employment relationship, a necessary predicate for such claims. *See* Dkt. 12-1, Point II.C, II.D, III.A. at pp. 21-23, 24-25. Plaintiffs' failure to address this dispositive issue (Dkt. 22, Point III at, pp. 13-14) abandons any "workplace discrimination" claims. Counts III, IV, and VI, and any employment-based claims in Count IX, must be dismissed.

### 2. Sexual Orientation Discrimination

Plaintiffs fail to address the conspicuous absence of any non-conclusory allegations plausibly suggesting that JD1 and JD2 were treated less favorably on the basis of their *sexual orientation*. *See* Dkt. 12-1, Points I.A, I.D at pp. 12-13, 18-20. Their failure to address this dispositive pleading omission compels dismissal of the balance of Count IX.

### 3. Child Victims Act

The Child Victims Act has no application whatsoever as against any College defendant. Dkt. 12-1, Point VI at pp. 32-33. Plaintiffs argue nothing contrary, abandoning as against those College defendants the CVA claims asserted in Count X.

## POINT II

### PLAINTIFFS CONTINUE TO MISCONSTRUE THE NATURE OF A BREACH OF CONTRACT CLAIM

It is black letter law in this context that violations of *specific and concrete* terms of the College's written Title IX policies and procedures afford the only basis for an actionable "contract" claim. Dkt. 12-1, Point VI at pp. 31-32. Plaintiffs' failure to identify any such concrete term, much less the violation of such a term, is fatal to their "contract" claim. Plaintiffs do not dispute this proposition, and tellingly they fail even to acknowledge any of the settled case law on this issue that defendants cited in their Opening Memorandum. *Id*. Their puzzling observation (Dkt. 22 at 16) that Title IX itself "is in the nature of a contract" *between the federal government and educational institutions* is a *non sequitur*, and completely irrelevant to the question whether a claim arising from concrete terms of a contract between a student and the College has been stated. Plainly, one has not, and Count VIII must be dismissed on this basis.

## POINT III

### PLAINTIFFS CONCEDE THE DEFICIENCY OF THEIR CLAIMS FOR NEGLIGENT HIRING AND SUPERVISION

Plaintiffs' claim for negligent hiring and supervision is not viable for several reasons, all stated in defendants' Opening Memorandum. Dkt. 12-1, Point V at p. 30. Seeking to end run these obvious deficiencies, plaintiffs seek to reframe the claim, arguing they "do not merely allege that Defendant Huckle failed to prevent their injuries," but that he also engaged in his own "course of conduct that constituted discrimination and sexual harassment[.]" Dkt. 22 at 15. Of course, this is

3

not the theory pleaded, which focuses *exclusively* on Huckle's alleged failure to protect student-athletes from Glavin's predatory conduct. Dkt. 1 at ¶¶ 140-144 (focusing exclusively on Huckle's alleged "duty to protect his student athletes").

Plaintiffs' efforts to interpose additional, disparate allegations by way of an "Exhibit A," *see* Dkt. 22-1, fail completely. Plaintiffs' Exhibit A is a nullity because: (a) they have not sought leave to amend—*see, e.g.*, Local R. Civ. P. 15(a), (b) (movant seeking leave must attach a complete, redlined amended pleading); and (b) the allegations in "Exhibit A" are entirely asserted "upon information and belief," and thus ineffective to viably plead acts or omissions within plaintiffs' knowledge. *See, e.g.*, *Renner v. Chase Manhattan Bank*, 1999 U.S. Dist. LEXIS 978, *37 (S.D.N.Y. Feb. 3, 1999) ("information and belief" allegations are "insufficient unless the facts are peculiarly within the knowledge of the defendants[.]").[3]

## POINT IV

### JD1 AND JD2 DO NOT STATE VIABLE TITLE IX DELIBERATE INDIFFERENCE CLAIMS

JD1 and JD2's Title IX deliberate indifference claims must be dismissed because they are both time-barred, and substantively deficient.

#### A. The "Disfavored" Continuing Violation Doctrine Does Not Save JD1 and JD2's Claims

JD2 and JD1 do not dispute that their pre-assault claims accrued in 2016 and 2017, respectively. Both dates are well outside the three-year limitations period, measured from the April 2021commencement of this action. Plaintiffs argue that their untimely claims can be salvaged by

---

[3] Plaintiffs claim that the so-called "facts" about defendant Huckle are discernable from "*publicly-available* information." Dkt. 22-1, ¶ 6; *see also* Dkt. 1 at ¶ 18. If such information is "publicly-available" and "readily available," plaintiffs cannot resort to allegations made "upon information and belief." And if their theory is that the College *ignored* such information, then they are asserting that the College did not actually possess this information. Either way, plaintiffs' self-serving assertions fail to support their efforts to stave off dismissal of the negligent hiring claim in this case.

4

application of the "continuing violation" doctrine, Dkt. 22 at 6-7, but blithely ignore numerous holdings "disfavoring" the doctrine, and applying it only in "compelling circumstances" not present in this case. *See* Dkt. 12-1 at 13-14 (collecting cases).

Specifically, JD1 and JD2 argue that harassment "continued" with the alleged assault of JD3 in August 2018, and that this unrelated assault of *someone else* supports application of the continuing violation doctrine to their own claims. Dkt. 22 at 6 ("[JD3's] assault occurred in August 2018, within the three-year period cited by Defendants"). Plaintiffs, however, cite no authority for the proposition that they may rely upon the alleged harassment of *someone else* (here, JD3) in their effort to pursue a continuing violation claim. But, plainly, the alleged sexual assaults of JD1, JD2, and JD3 were discrete events in each plaintiff's life. The fact that defendant Glavin allegedly assaulted JD3 within the limitations period does not constitute *continuing harassment* of either JD1 or JD2, and thus does not support their attempted invocation of the continuing violation doctrine. *See generally Purcell v. New York Inst. of Tech.*, 931 F.3d 59, *65 (2d Cir. 2019) (rejecting continuing violation argument because plaintiff did not allege he was the victim of any "ongoing discriminatory practice or policy").

Plaintiffs' reliance on the continuing violation doctrine under these circumstances also goes far beyond its well-established boundaries. The Second Circuit has held that "[t]he continuing violation doctrine applies only 'to claims that by their nature accrue only after . . . some threshold amount of mistreatment,' and not to 'discrete unlawful acts, even where those discrete acts are part of a serial violation.'" *Sant v. Stephens*, 821 Fed. Appx. 42, *45 (2d Cir. July 28, 2020); *see also Hart v. Artus*, 2021 U.S. Dist. LEXIS 132962, *27-28 (W.D.N.Y. July 16, 2021) (same). Thus, the continuing violation doctrine does not extend the accrual of *pre*-assault Title IX claims beyond the date of the alleged assault, and no basis exists to argue that the doctrine resurrects pre-assault

claims that expired *years* before a case is filed. Plaintiffs' failure to identify any authority for this novel application of the doctrine is fatal to their effort, as are the holdings in *Sant* and *Hart*.

Moreover, JD1 and JD2 knew they had been sexually assaulted as of the dates of those alleged events, so this is not a case where they could not "timely identify the sexual harassment[.]" *Irrera v. Univ. of Rochester*, 2016 U.S. Dist. LEXIS 203057, at *8 (W.D.N.Y. May 23, 2016) ("plaintiff admits that he recognized and believed that the April 2010 'arm-rubbing' and/or 'leaning in' incidents were sexual harassment"). For all these reasons, the continuing violation theory is of no avail to JD1 or JD2 with respect to their pre-assault Title IX claims.

### B. The Post-Assault Claims of JD1 and JD2 are Time-Barred as Well

The post-assault claims of JD1 and JD2 are equally untenable. These plaintiffs assert their post-assault claims accrued not when they were assaulted (in 2016 and 2017), but in October of 2018 when the College initiated a formal disciplinary process to adjudicate allegations of misconduct by Glavin. *See* Dkt. 22 at 7. But plaintiffs—true to form—cite no authority for the proposition that the statute of limitations for a post-assault claim is effectively held in abeyance until defendant responds in a manner plaintiff subjectively assesses as reasonable. The applicable case authority instead holds that post-assault claims accrue—at the *latest*—when those claims come "into existence"—*i.e.*, when the College allegedly had notice but failed to respond in a reasonable manner. *See, e.g.*, *Kelley v. Ithaca Coll.*, 2019 U.S. Dist. LEXIS 102636, at *16-17 (N.D.N.Y. June 18, 2019) (collecting cases); *Irrera*, 2016 U.S. Dist. LEXIS 203057, at *7. Thus, JD2's post-assault claims accrued, at the latest, in February 2018 (the date she reported Glavin's alleged assault, and identified him by name—*see* Dkt. 1 at ¶ 60), and JD1's post-assault claims accrued, at the latest, when she made a similar report in March 2018. (*Id.* at ¶ 63). Both are well outside the applicable limitations period, barring JD1 and JD2's post-assault claims as well.

### C. Their Post-Assault Claims Must Be Dismissed for the Additional Reason that the College's Response to Plaintiffs' Reports Was Not "Clearly Unreasonable"

Plaintiffs assert without citation that the College needed to do more in response to JD2's initial September 2017 report, even though she concedes she chose not to identify Glavin at that time. Dkt. 22 at 9. Her legal theory ignores settled law holding that an institution cannot investigate or adjudicate the conduct of an alleged perpetrator whose identity is unknown. *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 308 (S.D.N.Y. 2018); Office for Civil Rights, *Revised Sexual Harassment Guidance*, 2001, at 19 (where college receives anonymous report of harassment failing to identify assailant, college "would not reasonably be able to investigate and confirm these allegations")[4]; *see also Roskin-Frazee v. Columbia Univ.*, 2018 U.S. Dist. LEXIS 28937, at *28 (S.D.N.Y. Feb. 21, 2018) (University's response not clearly unreasonable "in light of the little information [the university] had regarding the identity of Plaintiff's assailant").

Likewise, although plaintiffs take issue with the time interval between JD1 and JD2's prior reports and the commencement of a formal disciplinary process later in 2018, the Complaint is silent with respect to any particular act or omission which College officials failed to undertake, and most importantly with respect to any particular request which plaintiffs made as to whether, or when, to investigate. The conspicuous absence of such allegations renders implausible plaintiffs' conclusory assertion that the College's response, as pleaded, was clearly unreasonable.

### D. Their Pre-Assault Claims Fail Due to the Absence of any Actionable Triggering Event

"[A] plaintiff must allege additional facts beyond past incidents of [sexual] assault on campus to sustain a pre-assault Title IX claim." *Tubbs.*, 2016 U.S. Dist. LEXIS 28465, at *28; *see also Posso v. Niagara Univ.*, 518 F. Supp. 3d 688, 699 (W.D.N.Y. Feb. 10, 2021). To state a claim,

---

[4] The Department of Education's new Title IX regulations that became effective on August 14, 2020 rescinded the Office of Civil Rights' 2001 *Revised Sexual Harassment Guidance*, but this guidance was in effect during the relevant time period in this action.

7

these "additional facts" must "give the school notice 'of a heightened risk that is specific enough to allow it to [implement a] remedy[.]'" *Posso*, 518 F. Supp. 3d at 699 (*quoting Tubbs*, 2016 U.S. Dist. LEXIS 28465, at *8).

JD1's conclusory allegations premised on the prior alleged assault of JD2 are insufficient to state a pre-assault claim. Dkt. 12-1 at 17-18. In fact, JD1 concedes that JD2 *did not identify Glavin* when she reported in September 2017, or provide any information that would put the College on notice of any heightened risk. *Id.*; Dkt. 22 at 9. The allegations do not remotely resemble those in *Posso*, in which several coaches and the athletic director allegedly "knew about the heightened risk of sexual assault *by male swimmers*[.]" *Posso*, 518 F. Supp. 3d at 698-699. Indeed, plaintiffs do not allege that Canisius learned of sexual misconduct on plaintiffs' team—or in any context relevant to JD1—until many months *after* JD1's alleged assault.

JD2's pre-assault claim is even more attenuated. This assault allegedly occurred in August of 2016—the earliest in time of the three plaintiffs—so she premises her pre-assault claim on a January 2015 news article reporting on a single incident of alleged sexual misconduct between two Canisius students who were *outside the country*. Dkt. 1 at ¶ 49. The contents of this article do not plausibly support the allegation that Canisius knew of a heightened risk of assault within a "particular group or context" before JD2's August 2016 assault (*see Roskin-Frazee*, 2018 U.S. Dist. LEXIS 28937, at *15-16), or that its officials had knowledge of risks "specific enough to allow [the College] to [implement a] remedy[.]'" *Posso*, 518 F. Supp. 3d at 699.

To allow JD2 to pursue a pre-assault claim on this reed-thin basis would expose all institutions in receipt of *one* prior report of sexual misconduct to similar claims.[5] That is at direct

---

[5] The Office for Civil Rights maintains a database that identifies institutions—numbering in the *hundreds*—with pending complaints. *See* U.S. DEPARTMENT OF EDUCATION, Office for Civil Rights, *Pending Cases Currently Under Investigation at Elementary-Secondary and Post-Secondary Schools*, https://www2.ed.gov/about/offices/list/ocr/docs/investigations/open-

8

odds with the Supreme Court's caution that Title IX "does not mean that [institutions] can avoid [Title IX] liability only by purging their schools of actionable peer harassment[.]" *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999). For these many reasons, JD1 and JD2's pre- and post-assault Title IX claims do not survive.

## POINT V

### JD3 FAILS TO STATE A TITLE IX RETALIATION CLAIM

JD3 fails to allege that she engaged in protected activity, a necessary prerequisite to a retaliation claim. Dkt. 12-1 at 18. She merely alleges that unspecified "complaints were made" concerning Glavin's conduct, and her assault "was subsequently reported" to defendant Huckle. Dkt. 22 at 10. Plaintiff's self-serving use of passive voice betrays the fact that *she herself* did not report the alleged assault—someone else did—and thus she did not engage in protected conduct. Plaintiff concedes this pleading defect, but seeks to excuse it by relying upon assertions in her Opposition Memorandum, found nowhere in the Complaint. *Id.* at 11. This patently improper effort to supplement a pleading is completely unavailing. *Mendoza v. Cornell Univ.*, 2021 U.S. Dist. LEXIS 44937, at *9 (S.D.N.Y. Mar. 10, 2021) (citation omitted) ("an opposing brief cannot be used to supplement otherwise conclusory allegations in a complaint"). This tactic should be rejected out of hand.

## POINT VI

### PLAINTIFFS DO NOT PLAUSIBLY ALLEGE A TITLE IX "UNEQUAL TREATMENT" THEORY

The Title IX theory authorizing "unequal treatment" liability was analyzed in *McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 291 (2d Cir. 2004), a Second Circuit case briefed thoroughly in defendants' Opening Memorandum. *See* Dkt. 12-1 at 18-20. In response, plaintiffs

---

investigations/index.html (last accessed December 15, 2021). Under plaintiffs' liability theory, all would be subject to a pre-assault claim.

rely upon their "central allegation–that they were subjected to sexual assaults[.]" Dkt. 22 at 12. That being plaintiffs' "central allegation," by their own admission plaintiffs have no viable unequal treatment theory, which is premised on an unequal resource allocation between male and female athletes. Dkt. 12-1 at 18-20. That plaintiffs were athletes, and that the reported sexual misconduct allegedly impacted their athletic careers, does not support recovery under an unequal treatment theory. Because plaintiffs' "central theory" relates to alleged sexual assault, they must establish deliberate indifference as a predicate to liability, and their unequal treatment claims do not survive.

## CONCLUSION

The College defendants' motion should be granted, and all claims except JD3's Title IX "pre-assault" claim and the Title IX retaliation claim asserted by JD1 and JD2 should be dismissed.

Dated: December 15, 2021                    WARD GREENBERG HELLER & REIDY LLP


By:   s/Thomas S. D'Antonio
        Thomas S. D'Antonio
        Joshua M. Agins
        Christine M. Naassana
1800 Bausch & Lomb Place
Rochester, New York  14604
Telephone:  (585) 454-0700
Facsimile:  (585) 423-5910
tdantonio@wardgreenberg.com
jagins@wardgreenberg.com
cnaassana@wardgreenberg.com

*Attorneys for defendants Canisius College, Nathan Huckle, and William Maher*