**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

JDl, JD2, and JD3,

                         **PLAINTIFFS,**

                                           <u>AMENDED</u> COMPLAINT
                                           <u>AND JURY DEMAND</u>

          **v.**                                     Civil Action No.

**CANISIUS COLLEGE,**
**NATHAN HUCKLE, WILLIAM MAHER,**
**and DONOVAN GLAVIN,**

                         **DEFENDANTS.**
_____

       Plaintiffs, JDl, JD2, and JD3, allege as follows:

### THE PARTIES

1.    Plaintiff JDlis a natural person with a place of residence in Buffalo, NY. She was a student athlete at Defendant Canisius College ("Canisius") from August 2017 to February 2019. Plaintiff JD1 ran indoor and outdoor track in High School and earned numerous accolades including team MVP (2014), All-League for 1500m and 3000m, All-Greater Rochester 2013, Monroe County 1st Team, Monroe County 2nd Team, and Team Captain. Plaintiff JDl also played soccer.

2.    Plaintiff JDl was recruited by numerous NCAA Division I, II, and III cross-country and track and field programs, including Lipscomb University, St. John's University, SUNY Geneseo, and Siena College, among others, for track and field and cross country before choosing to attend Canisius. Plaintiff JDl was also recruited by numerous NCAA Division I, II, and III colleges for soccer, including St. John Fisher, Nazareth College, LeMoyne College, Wells College, SUNY Buffalo State, Hamilton College, RIT, Niagara University, SUNY Potsdam, SUNY Canton, and Clarkson University.

3.    At Canisius, in her freshman year (2017-2018) Plaintiff JDl placed in the top 20 in the 3000 meter at the MAAC Outdoor Track & Field Championships, finished in the top 15 in the 1000 meter during the Brockport Multi and Invitational, and finished in the top 20 in the Canisius Alumni Classic.   During her sophomore year (2018-2019) she finished in the top 120 at the National Catholic Invitational, placed in the top 10 at the Little Three Championship, finished in the top 50 at the MAAC Championship, and was selected to the MAAC All- Academic Team for the 2018 season.

4.    Plaintiff JD2 is a natural person with a place of residence in Buffalo, NY. She was a student-athlete at Defendant Canisius College from 2016 to 2019. In high school, Plaintiff JD2 was cross country/outdoor track team captain 2015, and earned numerous accolades, including Tri-Valley first team all-star 2012-2015, New York all-state elite 2014 & 2015, won several Section III Class Bevent championships in2014 and 2015, Junior Olympic All-American2014 & 2015, All-CNY girls cross country team, Tri-Valley first team 2014 & 2015 outdoor track, 2016 Boilermaker 15K Scholarship, and was invited to compete at the 2015 Down Under International Games in Australia and the 2015 High Peaks Elite Distance Camp in Lake Placid, NY.

5.    Plaintiff JD2 was recruited by numerous NCAA Division I, II, and III cross country and track and field programs, receiving scholarship offers for some of these programs, including Cornell University, University of Massachusetts, University of Maryland-Baltimore College, University of Massachusetts Lowell, SUNY at Albany, Eastern Michigan University, University of Dayton, Siena College, University of North Carolina Asheville, Lipscomb University, SUNY at Buffalo, St. John's University, Stonehill College, Haverford College, Brandeis University, Occidental College, Niagara University, Manhattanville College, Ithaca

College, SUNY Jefferson, Shenandoah University, Dickinson College, St. Lawrence University, Hilbert College, Utica College, SUNY College at Brockport, Oswego State, and Southern New Hampshire University before choosing to attend Canisius.

6.   At Canisius, in her freshman season (2016-2017), Plaintiff JD2 placed in the top 5 at the Little Three Championship (SK), finished in the top 10 at the YSU National Invite (Indoor, DMR), placed second at the Nazareth ROC City Track & Field Classic (Outdoor, 5000), finished in the top three at the Buffalo Track & Field Invite (Outdoor, 3000s). In her sophomore season (2017-2018), placed in the top five in the 1000 meter run during the YSU Mid Major Invite, and finished in the top in the Little Three Championship. In her junior season (2018-2019), she finished in the top 120 in National Catholic Invitational, placed in the top 15 at Little 3 Championship, and finished in the top 50 at the MAAC Championship.

7.   Plaintiff JD3 is a natural person with a place of residence in Western New York. She was a student-athlete at Defendant Canisius College from August 2018 to June 2019. Prior to her time at Canisius, Plaintiff JD3 was a star athlete on her high school team. She was 2017 & 2018 Team Captain, earned numerous state wide honors, was named Outstanding Athlete of her high school for her junior and senior seasons, won multiple Sectional titles, and set more than a dozen school records.

8.   Plaintiff JD3 was recruited by and received scholarship offers from numerous NCAA Division I cross country and track and field programs, including Siena University, Boston College, Northeastern University, Lehigh University, University of Vermont, SUNY at Buffalo, Penn State University, Duquesne University, and St. John's University for track and field and cross country before choosing to attend Canisius.

9.     Plaintiff JD3 transferred from Canisius to attend another school for the Spring 2020 semester due to the trauma she endured.

10.   Defendant Canisius College ("Defendant Canisius") is a Jesuit College located at 2001 Main Street, Buffalo, NY 14208.

11.   Defendant Nathan Huckle ("Defendant Huckle") at all relevant times was and is an employee of Defendant Canisius and the head coach of its Cross-Country/Track and Field Team.

12.   Defendant William Maher ("Defendant Maher") at all relevant times was and is an employee of Defendant Canisius and has been the Athletic Director since 2005. Defendant Maher hired Defendant Huckle to coach the running program at Canisius.

13.   Donovan Glavin ("Defendant Glavin") was a student-athlete at Defendant Canisius from August 2016 to December 2018.

## JURISDICTION AND VENUE

14.   The Plaintiffs' legal claims are based on alleged violations of 20 U.S.C. § 1681, et seq., its interpreting regulations, and Department of Education/Office of Civil Rights policies. Jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331, 1343(3), and 1343(4).

15.   Jurisdiction for declaratory and otherreliefis invoked pursuant to 28 U.S.C. §§ 2201 and 2202.

16.   Venue in this action is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events, acts or omissions giving rise to Plaintiffs' claims occurred in this district.

17.   This court has subject matter jurisdiction.

## FACTUAL ALLEGATIONS

18.   Defendant Canisius College and Defendant Maher hired Defendant Huckle around 2010-2011 and failed to conduct a sufficient inquiry or investigation into his background. He was hired

~~despite the availability of publicly available information that should have led to a deeper investigation into his appropriateness as the head coach of a co-ed program.~~

~~19.~~18.   At relevant times, Plaintiffs  JD1, JD2, and JD3, and Defendant  Glavin were all student-athletes at Defendant Canisius College.

~~20.~~19.  Plaintiff JDl was a student-athlete at Canisius from August 2017 to February 2019.  She was a student at Canisius until 2019. She later transferred to another school as a result of the Defendants' conduct.

~~21.~~20.  Plaintiff JD2 was a student-athlete at Canisius College from August 2016 to February 2019. She was a student at Defendant Canisius starting in 2016 and has since graduated.  She was forced to cease participating in the Canisius cross country and track and field team as a result of the Defendants' conduct.

~~22.~~21.  Plaintiff JD3 was a student-athlete at Canisius College from August 2018 to June 2019. She left Canisius and transferred to another school as a result of the Defendants' conduct.

~~23.~~22.  Donovan Glavin was a student-athlete from August 2016 until he was suspended from the Cross-Country/Track and Field team when the plaintiffs' allegations were substantiated. Upon information and belief, Donovan Glavin continued as a student at Defendant Canisius.

~~24.~~23.  Defendant Huckle began coaching the cross-country/track and field team at Defendant Canisius in 2011.  He is currently the head coach of that team.

~~25.~~24.  Plaintiffs were irreparably harmed through the discriminatory, harassing, negligent and illegal actions of Defendants Canisius College, Nathan Huckle, William Maher, and Donovan Glavin.

**Discrimination, Harassment, and Sexual Assault Against Female Athletes
on the Canisius Cross-Country/Track and Field Team**

25.   In or about 2011, Defendant Canisius College hired Defendant Nathan Huckle and appointed him Head Coach of its combined men's and women's cross-country team.

26.   Defendant Canisius College and Defendant Maher failed to conduct a sufficient inquiry or investigation into his background. He was hired despite the availability of publicly-available information that should have led to a deeper investigation into his appropriateness as the head coach of a co-ed program.

27.   Upon information and belief, prior to hiring Defendant Huckle, Defendant Canisius College either failed to adequately investigate his background and/or references, or ignored information in the course of doing so concerning Defendant Huckle's history of grossly inappropriate conduct toward and/or relationships with high school and/or middle school aged female students Defendant Huckle taught and/or coached in his previous employment.

28.   Upon information and belief, prior to his employment with Defendant Canisius College, Defendant Huckle was employed by the Brighton Central School District as a 7th and 8th grade English teacher and the varsity track and field and/or cross-country coach.

29.   Upon information and belief, there were, and are, copious reports, information, and indications that during his employment with that school district, Defendant Huckle had inappropriate contact and/or relationships with underage female students who he taught and/or coached.

30.   Numerous witnesses report that, as coach of the Brighton School District varsity cross-country and/or track team, Defendant Huckle regularly behaved in a discriminatory, harassing, and abusive manner toward the girls on the team, while treating the boys with privilege and preference. Girls on the team were berated and ridiculed or ignored while boys were treated as friends and peers by Coach Huckle.

6

31.    In addition, Defendant Huckle treated certain girls on the team with preference and privilege based on the girls' willingness to tolerate inappropriate levels of familiarity and/or intimacy from Defendant Huckle.

32.    Multiple witnesses report that it was an open secret in and around the school and community that Defendant Huckle had an inappropriate, intimate, dating and/or sexual relationship with at least one and potentially more than one underage girls who Defendant Huckle taught and/or coached.

33.    Witnesses report that Defendant Huckle made inappropriate and harassing comments to girls in 7th and 8th grade about their bodies and/or legs under the guise of recruiting those girls to participate in the cross-country or track team.

34.    One witness reports that Defendant Huckle brought her up in front of a 7th or 8th grade classroom full of students while she was wearing shorts and measured her legs.

35.    At least one witness reports that Defendant Huckle commented to the 7th or 8th grade class of students that when he was in college he could spot a female freshman a mile away.

36.    During Defendant Huckle's employment with the Brighton School District, numerous students and parents reported concerns about his treatment of female students and athletes and his inappropriate relationships with certain girls to the School District administration.

37.    Upon information and belief, Defendant Huckle was forced, and/or allowed, to resign from his employment with the Brighton Central School District because of suspicions and/or accusations concerning his inappropriate contact and/or relationships with female students.

38.    Upon information and belief, if Defendant Canisius College made appropriate inquiry and/or investigation into Defendant Huckle's background and previous employment, this information was readily available from numerous sources.

39.    Upon information and belief, Defendant Canisius College either failed to make such inquiries or conduct such an investigation, or did so and ignored that information.

40.   Because of that background, Defendant Huckle was not an appropriate individual for Defendant Canisius College to hire to coach young women who were members of its cross-country team.

*Formatted: Character scale: 100%*

26.41.  Upon information and belief, beginning at least in or around 2011 and at all relevant times, Defendants Canisius, Huckle and Maher directed, controlled, managed, and conducted the Canisius College Cross-Country/Track and Field Team in a manner which was hostile and discriminatory toward women and lesbians, and which fostered, promoted and condoned harassment, abuse and even sexual assault against women and lesbians.

27.42.  Women and lesbians, including the Plaintiffs in this action, who resisted, opposed, criticized, complained of, or reported this treatment, were subjected to retaliation by defendants for doing so.

28.43.  At all relevant times, Canisius had a single Cross-Country/Track and Field Team for both men and women. Men and women on the team were coached by one head coach, Defendant Huckle, and were required to practice and train together. Resources were not allocated equally between men and women on the team.

29.44.  The Defendants' actions and failures to act caused the Cross-Country/Track and Field Team at Defendant Canisius to be permeated with an environment where female team members were treated as inferior to their male counterparts. The female athletes were regularly singled out, harassed, mocked, and embarrassed in front of the team.

30.45.  Female and lesbian athletes, including the Plaintiffs, were relentlessly called out by Defendant Huckle in front of the entire team and made to repeat drills and practice workouts.

31.46.  This was humiliating for those athletes. Defendant Huckle did not subject male athletes to this harassment nor were males singled out in this fashion.

~~32.~~47. In one instance in spring 2018 Defendant Huckle yelled at Plaintiff JD2 in front of everyone for wearing a raincoat inside. It was raining that day and the teams were going to run outside. Defendant Huckle forced Plaintiff JD2 to take it off. This was embarrassing for Plaintiff JD2.

~~33.~~48. In another instance, Plaintiff JD2 was required to take a personality test alone in Defendant Huckle's office in the fall of 2018. She was the only one that he required take this test. Defendant Huckle told her the results of that test indicated their personalities "were not compatible." He was condescending to Plaintiff JD2, telling her that he thought she would be the "rebel" personality, a personality which he thought was undesirable.

~~34.~~49. As a further example, on September 14, 2018 Plaintiffs JDl and JD2 attended the National Catholic Cross-Country invitational with the team. After the race Defendant Huckle pulled Plaintiffs JDl and JD2 outside of the team bus (where most of the team was) and publicly chastised Plaintiffs JDl and JD2. Defendant Huckle pointed at Plaintiffs JDl and JD2 and said that they were bad for his team and their relationship was bad for the team. Plaintiffs JD1 and JD2 are in a same-sex relationship which Defendant Huckle did not approve of. He also said that Plaintiffs JD1 and JD2 secluded themselves from the team and that they did not include people in their relationship. Defendant Huckle told Plaintiffs JDl and JD2 that they "needed to be more like" a certain heterosexual couple on the team who had been broken up for a while, and that Plaintiffs JD1 and JD2 should base their relationship off of that other heterosexual relationship so that Plaintiffs JD1 and JD2 could be better for the team. Defendant Huckle was aggressive and rude during this confrontation, embarrassing and verbally intimidating Plaintiffs JDl and JD2. They both felt extremely upset, undervalued, and demeaned as members of the team after this and did not feel welcome on the team bus any longer.

35.50. Male athletes were given Nike apparel, but the women on the team were not.

36.51. Defendant Huckle would focus his coaching time and effort on the male team members, and did not give equal time, effort or attention to the women.

37.52. During certain segments of team practice, Defendant Huckle would forbid the women from talking and would scream at them if they talked, while at the same time allowing the men to talk.

38.53. Defendant Huckle violated NCAA policy by forcing athletes to share beds for away meets and discriminated against female and lesbian athletes in doing so. Per NCAA mandate, each athlete is supposed to have their own bed, with a maximum of two athletes sharing a hotel room. Defendant Huckle arranged most rooms to have three women in them so females were forced to share beds. For the males, the most elite runners were given their own bed and were only placed two to a room. Conversely, the female runners were forced to share beds unless there happened to be an uneven number of female runners.

39.54. Furthermore, Defendant Huckle did not allow the female athletes to choose who they would share beds with. Upon information and belief, Defendant Huckle would intentionally place Plaintiffs JD1 and JD2 with other athletes whom they were not comfortable sharing a bed with. Defendant Huckle knew Plaintiffs JDl and JD2 were dating, yet he would force them to share beds with other women.

40.55. On one occasion, an athlete was eating yogurt on the bus returning from an away meet. Defendant Huckle accused the female athletes of spraying perfume and screamed at all the female athletes, demanding to know who had sprayed the perfume. The scent that Defendant Huckle found offensive came from an athlete's yogurt and not perfume.

41. 56. Defendant Huckle forced Plaintiff JD3 to engage in "guided visualizations" with him around September and October of 2018. During these "guided visualization" sessions, Plaintiff JD3 was required to come into Defendant Huckle's office for a one-on-one meeting. Plaintiff JD3 was directed to close the door behind her and sit down across from Defendant Huckle. She was told to close her eyes and not open them for any reason. Plaintiff JD3 was forced to sit silently with her eyes closed for approximately 20-30 minutes while Defendant Huckle spoke to her, ostensibly for guided visualization exercises. She had no idea what Defendant Huckle was doing during these sessions, as she was not permitted to open her eyes. This occurred on at least three occasions.

42. 57. The sexual harassment and discrimination against female athletes in the Cross-Country/Track and Field Team fostered a hostile environment which promoted and condoned other forms of sexual abuse against female athletes, including sexual assault and rape.

43. 58. For example, male athletes would engage in providing underage female athletes with alcohol and/or marijuana in order to take advantage of them sexually once they were intoxicated. Athletes on the Cross-Country/Track and Field Team would also engage in behavior such as "smoking a girl up," which meant that they would get female athletes "high" so that they could have sex with them. This was a commonly used phrase by male athletes on the team. Upper- class male athletes would give and buy drinks for freshmen female athletes to get them intoxicated in the hope of taking advantage of them once the females were too intoxicated to consent. This was a feature of the general male culture on the Cross-Country/Track and Field Team.

44. 59. Upon information and belief, some of these incidents were reported to Defendant Canisius anonymously through Callisto, but no action was taken. Callisto involved a complainant

reporting the name of the bad actor in the system, and upon information and belief, action

would only be taken if more than one complainant filed a report about an individual.

45.60.  This behavior was clear to Plaintiff JD2 when she was a sophomore and observed how the

older male athletes treated the new female athletes at team parties. One of the older male

athletes would ply female athletes with alcohol and marijuana and then take the female back

to his room. Graduated male athletes would stick around and prey on new freshmen athletes

at team parties.

46.61.  Most of the male athletes overall had a lack of respect for the female athletes on the team and

for women in general. Defendant Glavin, for example, stated to Plaintiff JD1: "the women's

team did not deserve as much as the men's because the women weren't as good."

47.62.  Defendant Huckle dismissed the Plaintiffs' concerns and called Plaintiffs JDl and JD2

"disgruntled," and stated they had an "axe to grind."

48.63.  Defendants fostered an environment that allowed male athletes to prey on female athletes.

Defendants' lack of appropriate supervision and inaction exposed the female athletes to the

risk of sexual assault.

**<u>Repeated Complaints and Reports About the Discrimination,<br>Sexual Harassment, Sexual Assault, and Rape</u>**

49.64.  Canisius College has a history of mishandling allegations of sexual misconduct in the past.

https://www.wgrz.com/article/news/education/canisius-college-under-federal-

investigation/71-128198884

12

~~50.~~65.  There were many reports and complaints to Canisius concerning gender discrimination, sexual harassment, sexual assault, and even rape in connection with the Cross-Country/Track and Field Team.

~~51.~~66.  Defendants repeatedly failed to take appropriate action in response to these reports and complaints of sexual harassment, abuse and sexual assault.

~~52.~~67.  Plaintiffs JDl and JD2 and other female athletes on the Cross-Country/Track and Field Team repeatedly complained to Defendant Huckle about Defendant Glavin's despicable, predatory sexual misconduct toward other female team members, often at off-campus sanctioned team parties.

~~53.~~68.  Defendant Huckle made it known that he expected female athletes to attend these parties. Defendant Huckle chastised Plaintiffs JD1 and JD2 for refusing to attend such parties, even after both had been assaulted by Defendant Glavin at such parties.

~~54.~~69.  Defendant  Glavin sexually assaulted  Plaintiff JD2 in his dorm room  in Bosch Dorm Hall after an off-campus team party on or about August 28, 2016.

~~55.~~70.  Plaintiff JD2 reported this assault to an assistant coach of the Cross-Co1mtry/Track and Field on or about September 1, 2017.

~~56.~~71.  The assistant coach reported the assault to Dr. Terri Mangione, then the Title IX coordinator for Defendant Canisius College. The assistant coach also reported this assault to Canisius College Associate Athletic Director Tracy Murphy.

~~57.~~72.  Subsequently, the assistant coach spoke with AAD Tracy Murphy more than once about these issues in the Cross-Country/Track and Field Team, and with Lisa Liotta who replaced Tracy Murphy sometime in the Spring of 2018.

13

58.73.  Defendant Glavin sexually assaulted Plaintiff JDl at an off-campus team party on or about December 15, 2017.

59.74.  Plaintiff JDl 's assault would never have happened to her had Defendants properly dealt with the reports of Defendant Glavine's assaultive conduct toward JD2.

60.75.  In or about Febrnary 2018, Plaintiff JD2 again reported Defendant Glavin's assault of her and reported Glavin's assault of JDl and other aggressive, hostile and abusive conduct by Glavin toward women to Defendant Huckle.

61.76.  Upon information and belief, Defendant Huckle reported these reports of sexual assault and other conduct by Defendant Glavin to one or more members of the Canisius College administration, its Athletic Department, and /or its Title IX Coordinator.

62.77.  Defendant Glavin again attempted to assault Plaintiff JD2 on February 25, 2017 when walking back from an off-campus team party. He then verbally threatened her after her refusal to go home with him, claiming that he deserved to have sex with her and that "last time wasn't good enough."

63.78.  In or about March 2018, Plaintiff JDland another female team member met with Defendant Huckle to report and complain again about the inappropriate, abusive and assaultive sexual conduct of Defendant Glavin. In words or substance, Defendant Huckle told them "I can't kick someone off the team for being a jackass" and suggested they make the women coming into the team as freshmen in the Fall of 2018 aware of their concerns.

64.79.  Thereafter, in or about May 2018, Defendant Huckle held an end of the year meeting with only the female team members and directed them __not__ to say anything about Defendant Glavine's assaultive and predatory conduct to the incoming freshmen women in the Fall, but instead to let them make up their own minds.

14

65. 80.  In August 2018 Plaintiff JD3 arrived on the Canisius College Campus as a 17 year-old freshman member of the Cross-Country/Track and Field Team.

66. 81.  In August 2018, members of the team observed Defendant Glavine on more than one occasion luring Plaintiff JD3 into his dorm room by moving her possessions into his room when she was under the influence of alcohol.

67. 82.  Team members attempted to intervene on Plaintiff JD3's behalf on these occasions, with limited success as Defendant Glavin opposed their efforts.

68. 83.  One female team member reported Glavin's conduct toward Plaintiff JD3 during this period to Defendant Huckle. Upon information and belief, Defendant Huckle did nothing.

69. 84.  Thereafter, on or about August 24, 2018, Defendant Glavin raped Plaintiff JD3 at an off-campus team party.

70. 85.  These were the same parties Defendant Huckle expected and demanded women on the team attend, at the risk of not being seen as a team player if they failed to do so.

71. 86.  Plaintiff JD3 arrived at Canisius in August 2018 with no idea of the predatory behavior of Defendant Glavin or other male athletes.

72. 87.  Plaintiff JD3 should have been warned about Defendant Glavin and the sexually inappropriate behavior that occurred the past seasons that was tolerated and condoned by Defendants.

73. 88.  Plaintiff JD3's rape would never have happened to her had Defendants properly dealt with predator Defendant Glavin when Plaintiffs JD1 and JD2 previously complained.

74. 89.  One other female athlete on the team met with Defendant Huckle about Defendant Glavin's rape of Plaintiff JD3 and described in detail to Defendant Huckle what had happened to Plaintiff JD3.

15

75.90.   The sexual assaults by Defendant Glavin on Plaintiffs JDl and JD2 were the subject of a belated Title IX investigation by Defendant Canisius College.

76.91.   In or around October 2018 Title IX Coordinator Terri Mangione met with several of the women on the Cross-Country/Track and Field Team several of whom repeated their concerns and reports of sexual harassment, discrimination, and sexual assault.

77.92.   Ms. Mangione finally asked several individuals to submit written complaints, and initiated a Title IX investigation.

78.93.   Despite abundant reports of sexual harassment and discrimination by Defendant Huckle, the Title IX investigation is limited to Defendant Glavin's sexual assaults of JDl and JD2.

79.94.   Upon information and belief, Defendant Canisius College has never conducted a Title IX investigation concerning the reports of sexual harassment, discrimination and retaliation by Defendant Huckle.

80.95.   At the conclusion of the Title IX proceeding, Defendant Glavin was ostensibly suspended from the Cross-Country/Track and Field Team, but remained a student at Defendant Canisius and remained on campus. He was not expelled from Canisius and no measures were put into place to make sure Plaintiffs did not have to face their assailant while they attempted to finish their education.

81.96.   Despite his suspension from the team, Defendant Glavin continued to train with the team, including joining the men on the team for training runs. Upon information and belief, Defendant Ruckel was aware of and condoned Defendant Glavin's training with the team despite his suspension.

**Retaliation**

82.97. Defendants retaliated against the Plaintiffs for complaining about and reporting the Defendants' sexual harassment, discrimination, abuse and assault.

83.98. On or about November 12, 2018 Defendant Huckle summoned Plaintiffs **JD1,** JD2 and another female member of the team to a meeting in his office and pointedly told them he was making an audio recording of the meeting. Defendant Huckle's statements and demeanor during this meeting caused all three women to feel pressured by Defendant Huckle to resign from the team.

84.99. On or about December 6, 2018, Defendant Huckle met with Plaintiff JD2 in his office, ostensibly for an end of season meeting. Defendant Huckle's conduct toward JD2 during this meeting to feel threatened and uncomfortable. When she chose to leave, Defendant Huckle chased and screamed at JD2. This incident was witnessed by other students, and upon information and belief one of those witnesses was so disturbed by Defendant Huckle's conduct that they began recording the event.

85.100.    The following day, December 7, 2018, two other students directed lengthy letters to Canisius College President John Hurley, each reporting a detailed and extensive array of concerns and complaints about sexual harassment, discrimination, sexual assault, and retaliation in the Cross-Country/Track and Field team generally, and on the part of Defendant Huckle specifically. Those letters also voiced concerns about the failure of Canisius College to respond effectively to those problems. Upon information and belief, there was no response and no action taken based on those letters.

86.101.    On December 10, 2018, Plaintiff JD2 was again required to meet with Defendant Huckle, and this time also with Senior Womens' Athletic Director Lisa Liotta. During this meeting

Defendant Huckle accused JD2 and JDI of "micro-aggressions" apparently for speaking to each other during team practices.

87. 102.        Plaintiff JDl was ultimately forced to resign from the Cross-Country/Track and Field Team in February 2019 as a result of Defendants' conduct and later transferred to another school to finish her education.

103.    Plaintiff JD2 was ultimately forced to resign from the Cross-Country/Track and Field Team in February 2019 as a result of Defendants' conduct.

> **Formatted:** Character scale: 100%

88. 104.        In or around September 2018, JD3 stopped attending the team parties which Defendant Huckle expected the female team members to attend. Thereafter, Defendant Huckle contacted JD3's parents and falsely represented to them that the male student JD3 was dating was not of good character and would be a bad influence on JD3.

105.    As a result of the Defendants' conduct, Plaintiff JD3 was forced to resign from the Cross-Country/ Track and Field Team in June 2019.

> **Formatted:** Character scale: 100%

106.    JD3 sent an email message at the time of her resignation from the team to members of the Athletic Department, referencing the reasons for her resignation from the team, including her assault and other conduct of the Defendants.

> **Formatted:** Character scale: 100%

89. 107.        JD3 met with Deputy Title IX Coordinator Connie Pileri around this time to discuss those issues.

90. 108.        After Plaintiff JD3 resigned from the team Thereafter, Defendant Huckle sent an inappropriate email to all team members blaming and embarrassing Plaintiff JD3 for her extremely difficult decisionto leave Defendant's Cross-Country/Track and Field Team.

91. 109.        After their resignations from the Cross-Country/Track and Field team, to keep their scholarship support Plaintiffs JD2 and JD3 were forced to sign agreements which required them to perform service in lieu of participating on the athletic team. Under those agreements,  they were

18

required to do laundry for all the other sports teams. While working there, Plaintiffs were forced to see all the people that were their former teammates. Plaintiff JD3 had work during the Cross-Country/Track and Field teams' practice, and Plaintiff JD2 was harassed by two members of the team on one occasion.

92.110.    Until at least November 2019 Plaintiffs JD2 and JD3 were still listed on the Canisius Collegewebsite as athletes for purposes of Title IX compliance, despite the fact they were required toperform service hours to keep their scholarships as non-athletes.

### Plaintiffs' Injuries

93.111.      Plaintiffs JDl, JD2, and JD3 were all extremely talented and promising runners that had

successful careers cut short due to the conduct of all Defendants.

94.112.      Each Plaintiff was irreparably harmed by Defendants' actions and inaction.

95.113.      Defendant Huckle promised Plaintiff JDl a safe environment as well as one that would

bringout her full athletic potential at the start of Plaintiff JD1's freshman season in 2017. These

promises soon proved to be worthless and hollow. Defendant Huckle constantly called out and

harassed women on the team for things such as poor form while doing drills or for what female

athletes were wearing.

96.114.      Plaintiff JDl felt shamed by Defendant Huckle for her sexuality and for having a

girlfriend, tothe point where Plaintiff JD1 was nervous to even be standing next to her girlfriend

at practice or meets. Plaintiff JD1 tried to suppress her romantic relationship out of the fear of

being ridiculed or embarrassed by Defendant Huckle.

97.115.      Plaintiff JD1 was appalled to hear Defendant Huckle state to her that he could not kick

someone off the team for "being a jackass" after Plaintiff JDl complained and confided in

Defendant Huckle about allegations of sexual misconduct. Plaintiff JDl lost faith in Canisius

and its employees and became frightened to stay on the Cross-Country/Track and Field Team

at Canisius. Plaintiff **JDl** was terrified and appalled when, in Spring 2018, Defendant Huckle

told all the women on the team during one of the final team meetings of the season to not warn or

inform the incoming freshman of the sexual assault that had been perpetrated by Defendant

Glavin. Plaintiff was heartbroken to learn that JD3, a 17-year-old girl was raped in August

2018 by the same athlete that Defendants Huckle and Canisius College had allowed to stay on

the team despite having knowledge he was a predator.

20

98.116.      As a result of the defendants' conduct, JDl 's academic performance dropped, she had

difficulty with daily activities, and found it hard to concentrate. The trauma suffered by JDl

deprived her of the Division 1 running career that had been her dream since she was a child,

and stole from her the very joy of running.

99.117.      Plaintiff JD2 was sexually assaulted by Defendant Glavin before her first semester at

Defendant Canisius had even begun. She had not even attended her first college class or

competed in her first collegiate race. Plaintiff JD2 was a straight "A" student in High School,

a member of the Honor Society, was taking Advanced Placement classes, and was running at

the top of her section. After being sexually assaulted by Defendant Glavin, Plaintiff JD2 had

three semesters where her GPA was below a 3.0 and was running nowhere near the level she

was at while in High School. She struggled going to class when she was a freshman because

she feared seeing her attacker Defendant Glavin in the halls or in classes the two had together.

100.118.      Plaintiff JD2 suffers from flashbacks of her assault. She has had nightmares and trouble

sleeping.  She had difficulty eating and training, lost body weight, and suffered chronic injures as

a result. At times she has harmed herself. She suffers from ongoing panic attacks and has lost

the joy of running.

101.119.      Plaintiff JD3's entire life prior to arriving at Canisius College revolved around being a

straight "A" student and running. Plaintiff JD3 excelled both as a student and as an athlete in

Cross- Country and Track and Field. During her High School career, she won League

Championships, Sectional Championships, and even won two National Championships.

Plaintiff JD3's goal she had set for herself for when she ran collegiately was to "crush records."

102.120.      Defendant Huckle tricked Plaintiff JD3 into joining the Canisius College Cross-

Country/Track and Field Team by offering her a scholarship that he alleged to be "double"

what any other

athlete had ever been awarded. Defendant Huckle then targeted and called Plaintiff JD3 out during drills in front of the whole team, often making her repeat drills while everyone was watching.

103.121.    Plaintiff JD3 was also forced to go into private "guided visualization"meetings with Defendant Huckle where she was forced to close her eyes and sit silently for 20-30 minutes while he talked. These sessions made Plaintiff JD3 extremely uncomfortable. Plaintiff JD3 had no ideawhat Defendant Huckle did during these sessions.

104.122.    Defendants' conduct also exposed JD3 to sexual assault by Defendant Glavin, by tolerating and cultivating a culture of discrimination, abuse and assault against women in the cross country and track and field program, and intentionally concealing the prior sexual misconduct of Defendants.

105.123.    Defendants' conduct destroyed Plaintiff JD3's great passion for running and ruined her confidence and self-esteem.  She has had difficulty eating and sleeping properly, was frequently ill, lost her motivation to train and to socialize with friends. She had plans to become a professional running coach, but now has difficulty even running herself.

**<u>FIRST CAUSE OF ACTION</u>**
**Sexual Harassment and Sexual Assault in Violation of Title IX of the Education
Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* Against All Defendants.**

106.124.    Plaintiffs hereby repeat, reiterate, and re-allege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

107.125.    Title IX of the Education Amendments Act of 1972 states: "No person in the United States shall on the basis of sex, be ... subject to discrimination under any education program or activity receiving Federal financial assistance."

22

108.126.    By the above-described conduct, Plaintiffs were discriminated against on the basis of their

sex at Defendant Canisius College, including but not limited to by sexual misconduct, sexual

harassment, sexual assaults, and a hostile environment by Defendants Huckle, Glavin, and

Maher. Plaintiffs were all subjected to discrimination due to their sex throughout their time as

athletes on Defendant's Cross-Country/Track and Field Team.

109.127.    By the above-described conduct, Defendant Canisius was on notice of the

discriminatory conduct engaged in by faculty and coaching staff at Canisius. Defendant

Canisius failed to carry out its duties and obligations pursuant to Title IX to investigate and take

corrective action.

110.128.    By the above described conduct, Defendant Canisius allowed and fostered an

educational andathletic environment in which discriminatory and harassing practices that

were, and continueto be, sufficiently severe or pervasive to create an environment that is both

subjectively and objectively hostile, abusive, and retaliatory.

111.129.    By the above described conduct, Defendant Canisius tolerated, condoned, ratified,

and/or engaged in the sexually abusive educational and athletic environment, or, in the

alternative, knew, or should have known, of its existence, yet failed to conduct proper

investigations and failed to take remedial action.

112.130.    By the above described conduct, Defendants Huckle, Maher, and Glavin committed,

caused, and/or aided and abetted the discriminatory conduct against Plaintiffs.

113.131.    By reason of the continuous and ongoing nature of the above-described sexual assault,

sexualabuse, sexual harassment and sexual discriminatory conduct, Plaintiffs are entitled to

the application of the continuing violation doctrine to the unlawful acts alleged herein.

114.132.    As a direct and proximate result of Defendants' unlawful actions or inactions, Plaintiffs

have suffered, and will continue to suffer, harm, including, but not limited to, loss of

future

educational, athletic, and employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic and non-economic damages.

~~115.~~133.    Based on the foregoing, Plaintiffs have stated a cause of action for sexual harassment and sexual assault in violation of Title IX against all Defendants.  Therefore, Plaintiffs are entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorney's fees and costs, and other appropriate relief.

### SECOND CAUSE OF ACTION
**Retaliation in Violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* Against All Defendants**

~~116.~~134.    Plaintiffs hereby repeat, reiterate, and re-allege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

~~117.~~135.    By the above described conduct, Defendant Canisius has retaliated against Plaintiffs in violation of Title IX by, *inter alia,* failing to properly investigate their claims of discrimination and sexual assault in retaliation of their protected activity.

~~118.~~136.    By the above described conduct, Defendants Huckle, Maher, and Glavin committed, caused, and/or aided and abetted the retaliatory conduct against Plaintiffs.

~~119.~~137.    As a direct and proximate result of Defendant Canisius's unlawful conduct in violation of Title IX, Plaintiffs have suffered, and continue to suffer, harm for which they are entitled to an award of damages to the greatest extent permitted by law, including, but not limited to, monetary and/or economic harm, for which they are entitled to an award of monetary damages.

~~120.~~138.    As a direct and proximate result of Defendant's unlawful actions, Plaintiffs have suffered, and will continue to suffer, harm, including, but not limited to, loss of future educational, athletic,

and employment opportunities, humiliation, embarrassment, reputational harm, emotional and

physical distress, mental anguish, and other economic and non-economic damages.

## THIRD CAUSE OF ACTION
**Sex Discrimination and Retaliation in Violation of Title VII of the Civil Rights Act of 1964
and the New York State Human Rights Law (Executive Law, Article 15), § 296(1) Against
All Defendants.**

~~121.~~139.	Plaintiffs hereby repeat, reiterate, and re-allege each and every allegation contained in

the preceding paragraphs as though fully set forth herein.

~~122.~~140.	To establish a prima facie case of discrimination, a plaintiff must show four things: (1)

she isa member of the protected class; (2) she is qualified for her position; (3) she has suffered

an adverse employment action; and (4) the circumstances surrounding that action give rise to

aninference of discrimination. 42 U.S.C. 2000e-2; *Abdu-Brisson v. Delta Air Lines, Inc.,* 239

F.3d 456, 466-7 (2d Cir 2001).

~~123.~~141.	By the above-described conduct, Defendant Canisius subjected Plaintiffs to discrimination

onthe basis of their sex in violation of Title VII and the NYSHRL.  Defendant Canisius

discriminated against Plaintiffs on the basis of their sex, and through its acts and failures to

act, ratified and fostered an educational and/or employment environment that allowed Canisius

student athletes to engage in sexual misconduct and sexual assaults.

~~124.~~142.	By the above-described conduct, Defendants Huckle, Maher, and Glavin subjected

Plaintiffs to discrimination on the basis of their sex in violation of Title VII and the NYSHRL.

Defendants discriminated against Plaintiffs on the basis of their sex, and through their acts and

failures to act, ratified and fostered an educational and/or employment environment that

allowed Canisius student-athletes such as Defendant Glavin to engage in sexual misconduct and sexual assaults.

~~125.~~143.    As a result, Plaintiffs were denied the opportunity to obtain an educational environment and/or employment environment free from discrimination and otherwise were denied the same terms and conditions of education available to other students who were not subjected to such treatment.

~~126.~~144.    Defendants retaliated against Plaintiffs for resisting, reporting and complaining about the sexual harassment, discrimination and abuse they were subjected to by the defendants.

~~127.~~145.    As a direct and proximate result of Defendant Canisius's unlawful discriminatory conduct in violation of Title VII and the NYSHRL, Plaintiffs have suffered, and continue to suffer, monetary and emotional harm for which they are entitled to an award of damages.

~~128.~~146.    Based on the foregoing, Plaintiffs have stated a cause of action for sex discrimination againstDefendants.

### FOURTH CAUSE OF ACTION
**Aiding and Abetting Sex Discrimination** in **Violation of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law (Executive Law, Article 15), § 296(1) Against All Defendants.**

~~129.~~147.    Plaintiffs hereby repeat, reiterate, and re-allege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

~~130.~~148.    By the above-described conduct, Defendants Huckle, Maher, and Glavin knowingly or recklessly aided and abetted, and directly participated in, the unlawful discrimination to which Plaintiffs were subjected in violation of Title VII and the NYSHRL.

~~131.~~149.    As a direct and proximate result of Defendant Huckle's, Maher's, and Glavin's unlawful discriminatory conduct and harassment in violation of Title VII and the NYSHRL, Plaintiffs

have suffered, and continued to suffer, monetary and emotional harm for which they are
entitled to an award of damages.

### FIFTH CAUSE OF ACTION
**Tort of Negligence Against All Defendants.**

~~132.~~150.      Plaintiffs repeat each and every allegation set forth in the preceding paragraphs as though
fully set forth herein.

~~133.~~151.      In New York, to establish a cause of action for negligence, a plaintiff must show: (1)
the defendant owed a cognizable duty to the plaintiff, as one who was a foreseeable plaintiff;
(2)the defendant breached his duty to the plaintiff; (3) the defendant's breach was the actual
and proximate cause of the plaintiffs damage; and that (4) the plaintiff suffered legally
cognizableinjury or damages.

~~134.~~152.      Defendants owed Plaintiffs a duty of care as student-athletes at Canisius and breached this
duty when they failed to properly investigate and remedy harassment and assaults of Plaintiff
by other student athletes and to prevent such further sexual assaults from happening after
Defendants were on notice of the behavior. Plaintiffs suffered, and continued to suffer,
monetary and emotional harm for which they are entitled to an award of damages and
Defendants are the actual and proximate cause of the plaintiffs' damages.

~~135.~~153.      Based on the foregoing, Plaintiffs have stated a cause of action for negligence against
Defendants.

### SIXTH CAUSE OF ACTION
**Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964 and the
New York State Human Rights Law (Executive Law, Article 15), § 296(1) Against All
Defendants.**

~~136.~~154.      Plaintiffs repeat each and every allegation in the preceding paragraphs as though fully
set forth herein.

28

137.155.     To plead a claim of hostile work environment, a plaintiff must show: (a) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (b) that a specific basis exists for imputingthe conduct that created the hostile environment to the employer.  *Petrosino v. Bell,* 385 F.3D 210 (2d Cir. 2004).

138.156.     Plaintiffs JD2 and JD3 were forced to do laundry to retain their athletic scholarship.

Defendants Canisius College and Maher required Plaintiffs JD2 and JD3 to perform these tasks to keep their scholarship despite the fact they were victims of sexual assault and rape.

139.157.     Based on the foregoing, Plaintiffs have stated a cause of action for hostile work environmentagainst Defendant.

<u>SEVENTH CAUSE OF ACTION</u>
**Tort of Negligent Hiring and Supervision Against Defendant Canisius College.**

140.158.     Plaintiffs repeat each and every allegation set forth in the preceding paragraphs  as though fully set forth herein.

141.159.     To state a claim for negligent supervision under New York law, a "supervisor must have 'kn[own] or should have known of the employee's propensity for the conduct which caused the injury.'" *Krystal G. v. Roman Catholic Diocese of Brooklyn,* 34 Misc. 3d 531,537 (Sup. Ct. 2011). To prevail on this claim, Plaintiff must show that "defendant knew or should have known about his subordinate's  propensity for the conduct that caused the plaintiffs injury." Id. at 538.

142.160.     Defendants knew or should have known about Defendant Glavin's propensity for inappropriate behavior as Plaintiffs JD1 and JD2, among others, complained to Defendant Canisius, Huckle, and Maher about it in the past and Plaintiff JD3 and others was subsequently sexually assaulted and harmed by Defendant Glavin.

143.161.    Defendant Maher was responsible for hiring Defendant Huckle. Defendant Maher knew

or should have known that Defendant Huckle would have a duty to protect his student-athletes

from predatory behavior such as sexual assault and rape by other student-athlete teammates.

Defendant Huckle failed to do so, as multiple female athletes were victims of sexual assault

and even rape under his watch. Some of these sexual assaults and a rape occurred after

Defendant Huckle had received numerous complaints from female student-athletes and

Defendant Huckle therefore knew or should have known about student-athlete Defendant

Glavin's sexually predatory behavior. Defendant Huckle even went so far as to forbid the

female student-athletes on the Cross-Country/Track and Field Team to warn the incoming

freshmen athletes of Defendant Glavin's sexually predatory behavior.

144.162.    Based on the foregoing, Plaintiffs have stated a cause of action for negligent supervision

against Defendant.

**EIGHTH CAUSE OF ACTION**
**Breach of Contract Against Defendant Canisius College.**

145.163.    Plaintiffs hereby repeat, reiterate, and re-allege each and every allegation contained in

the preceding paragraphs as though fully set forth herein.

146.164.    Based on the aforementioned facts and circumstances, Defendants breached express and/or

implied agreement(s) with Plaintiffs to provide them with scholarships to attend Canisius

College.

147.165.    As a direct and foreseeable consequence of these breaches, Plaintiffs sustained damages

including, without limitation, emotional distress, loss of educational and economic

opportunities and other direct and consequential damages. Plaintiffs are entitled to recover

damages for Defendants' breach of the express and/or implied agreements.

148.166. As a direct and proximate cause of the above conduct, actions and inactions, Plaintiffs have suffered physical, emotional and economic injuries.  As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be determined at trial plus attorney's fees, expenses, costs and disbursements.

149.167.   Based on the foregoing, Plaintiffs have stated a cause of action for breach of contract againstDefendants.

### NINTH CAUSE OF ACTION
**Sexual Orientation Discrimination in Violation of Title IX of the Education Amendments Act of 1972, Title VII of the Civil Rights Act of 1964, and the New York State Human Rights Law (Executive Law, Article 15), § 296(1) Defendants Canisius, Maher, and Huckle.**

150.168.   Plaintiffs hereby repeat, reiterate, and re-allege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

151.169.   Title IX, Title VII, and the NYSHRL prohibit discrimination on the basis of one's sexual orientation.

152.170.   By the above-described conduct, Defendants subjected Plaintiffs JDl and JD2 to discrimination on the basis of their sex in violation of Title IX, Title VII, and the NYSHRL. Defendant Huckle discriminated against Plaintiffs JD1 and JD2 on the basis of their sexual orientation by ostracizing them and chastising them for their same sex relationship, and through Defendant Canisius's acts and failures to act, ratified and fostered an educational and/or employment environment that allowed Canisius employees to engage in harassment and creating a hostile work environment for athletes on the basis of their sexual orientation.

153.171.   As a result, Plaintiffs JDl and JD2 were denied the opportunity to obtain an educational environment and/or employment environment free from discrimination and otherwise were

denied the same terms and conditions of education available to other students who were not subjected to such treatment.

154.172.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII and the NYSHRL, Plaintiffs have suffered, and continue to suffer, monetary and emotional harm for which they are entitled to an award of damages.

155.173.    Based on the foregoing, Plaintiffs JDl and JD2 have stated a cause of action for sexual orientation discrimination against Defendants.

### TENTH CAUSE OF ACTION
**Tort of Negligence and/or Intentional Sexual Assault in Violation of the NY Child Victims Act, CPLR §§ 213-c and 214-g Against All Defendants**

156.174.    Plaintiffs hereby repeat, reiterate, and re-allege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

157.175.    Plaintiff JDl  was sexually assaulted by Defendant Glavin on or about August 28, 2016.

158.176.    Plaintiff JD2 was sexually assaulted by Defendant Glavin on or about December 15, 2017.

159.177.    Plaintiff JD3 was raped by Defendant Glavin at a team-sanctioned off campus party in August 2018. Plaintiff JD3, was seventeen (17) years of age at the time, did not consent to having sexual intercourse with Defendant Glavin, and was unable to consent due to intoxication.

160.178.    The conduct of all defendants caused and contributed to the sexual assault.

161.179.    Plaintiffs were each irreparably harmed by Defendant Glavin's sexual assault and have suffered, and continue to suffer, monetary and emotional harm for which each is entitled to an award of damages.

162.180.    This cause of action is timely pursuant to the NY Child Victims Act, CPLR §§ 213-c

and 214-g.

163.181.   Based on the foregoing, Plaintiffs have each stated a cause of action for negligence and/or intentional sexual assault in violation of NYS law and the NY Child Victims Act.

**WHEREFORE,** Plaintiffs respectfully request this Court enter judgment in their favor on all causes of action and award the following relief:

A.   Damages for the Plaintiffs' emotional distress, including pain, suffering, loss of enjoyment of life, humiliation and other injuries in an amount to be determined at trial;

B.   A judgment fully reimbursing Plaintiffs the full cost of their scholarships and their attendance, including tuition, fees, and room and board;

C.   Defendants to pay Plaintiffs the costs of this action, together with reasonable attorney's fees and disbursements;

D.   Directing Defendants to pay all unreimbursed medical costs incurred by Plaintiffs as a result of the stress and anxiety they suffered resulting from the discrimination, including diagnostic analysis, treatment and therapy, and follow-up therapy;

E.   Injunctive relief as this Court deems just and equitable;

F.   Defendants to be assessed punitive damages; and

G.   Plaintiffs to have such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) Fed. R. Civ. P., Plaintiff hereby demands a trial by jury for all issues triable of right by a jury in this case.

Dated:          April 19, 2021
                Buffalo, New York

Respectfully submitted, Plaintiffs
By their attorneys

_/s/_ Lindy Korn
Lindy Korn, Esq.
Catherine McCulle, Esq.
*Attorneys for Plaintiffs*
The Law Office of Lindy Korn PLLC
Electric Tower
535 Washington Street, Ninth Floor
Buffalo, New York 14203
(716) 856-5676 x 5
(716) 507-8475
lkorn@lkorn-law.com
cmcculle@lkorn-law.com

_/s/_ Brian M. Melber
Brian Melber, Esq.
*Attorneys for Plaintiffs*
Personius Melber LLP
2100 Main Place Tower
Buffalo, NY 14202
(716) 855-1050
bmm@personiusmelber.com