UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JD1, JD2, and JD3,

                   Plaintiffs,

      vs.

CANISIUS COLLEGE, NATHAN HUCKLE, WILLIAM
MAHER, and DONOVAN GLAVIN,

                 Defendants.

**ANSWER**

Case No. 1:21-cv-00521-GWC

       Defendants Canisius College ("Canisius" or the "College"), Nathan Huckle, and William Maher (collectively, the "College Defendants"), for their Answer to plaintiffs' Amended Complaint (Dkt. 32), state upon information and belief and through counsel, Ward Greenberg Heller & Reidy LLP, as follows:

       1.     The College Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 1, 2 and 3 of the Amended Complaint, except admit that at certain times plaintiff JD1 attended Canisius College as a student, was a member of the College's Women's Cross Country and Track & Field teams, and competed at certain meets and events.

       2.     The College Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 4, 5 and 6 of the Amended Complaint, except admit that at certain times plaintiff JD2 attended Canisius College as a student, was a member of the College's Women's Cross Country and Track & Field teams, and competed at certain meets and events.

3.      The College Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraphs 7, 8 and 9 of the Amended Complaint, except admit that at certain times plaintiff JD3 attended Canisius College as a student, was a member of the College's Women's Cross Country and Track & Field teams, and competed at certain meets and events, and further admit that plaintiff JD3 transferred from Canisius College in or around 2020.

4.      The College Defendants state in response to the allegations set forth in paragraph 10 of the Amended Complaint that Canisius College is, and for more than 150 years has been, an institution of higher learning organized and existing under the laws of the State of New York, and during that entire period has been sponsored by the Society of Jesus, commonly known as the Jesuits.

5.      The College Defendants admit in response to the allegations set forth in paragraph 11 of the Amended Complaint that defendant Huckle was during the times relevant to this action employed by Canisius as the head coach of its Men's and Women's Cross-Country and Track and Field Teams.

6.      The College Defendants admit in response to the allegations set forth in paragraph 12 of the Amended Complaint that defendant Maher during all times relevant to this action was employed by Canisius as its Athletic Director, and that Mr. Maher participated in the hiring of Coach Huckle.

7.      The College Defendants admit in response to the allegations set forth in paragraphs 13 and 22 of the Amended Complaint that defendant Glavin at various times relevant to this action attended Canisius College as a student.

2

8.      The College Defendants state in response to the allegations set forth in paragraphs 14, 15, 16 and 17 that these allegations constitute legal conclusions, not averments of fact, and thus no response is required; to the extent a response is deemed necessary, the College Defendants deny knowledge or information sufficient to form a belief.

9.      The College Defendants admit in response to the allegations set forth in paragraph 18 of the Amended Complaint that at certain relevant times, plaintiffs and defendant Glavin were student-athletes enrolled at Canisius College.

10.     The College Defendants admit in response to the allegations set forth in paragraph 19 of the Amended Complaint that plaintiff JD1 was a student-athlete at Canisius from in or around August 2017 through February 2019, deny knowledge or information sufficient to form a belief as to her reasons or rationale for transferring, but affirmatively state that to the extent plaintiffs seek to aver that JD1 transferred as a result of any act of wrongdoing or misconduct on the part of any College Defendant, that averment is denied.

11.     The College Defendants admit in response to the allegations set forth in paragraph 20 of the Amended Complaint that plaintiff JD2 was a student-athlete at Canisius College from in or around August 2016 through February 2019, and further admit that she graduated from Canisius in or around 2020. The College Defendants deny the remaining allegations set forth in paragraph 20.

12.     The College Defendants admit in response to the allegations set forth in paragraph 21 of the Amended Complaint that plaintiff JD3 was a student-athlete at Canisius from in or around August 2018 through June 2019 and deny knowledge or information sufficient to form a belief as to her reasons or rationale for transferring, but affirmatively state that to the extent plaintiffs seek

to aver that JD1 transferred as a result of any act of wrongdoing or misconduct on the part of any College Defendant, that averment is denied.

13.     The College Defendants admit the allegations set forth in paragraph 22 of the Complaint that defendant Glavin was a student at Canisius College at various times relevant to this action, but can neither admit nor deny the balance of the allegations set forth in this paragraph due to the restrictions imposed by law on the public disclosure of student educational records without student consent, or waiver.

14.     The College Defendants admit in response to the allegations set forth in paragraphs 23 and 25 of the Amended Complaint that defendant Huckle began coaching the Men's and Women's Cross-Country and Track & Field Teams in or around 2011.

15.     The allegations set forth in paragraph 24 of the Amended Complaint state legal conclusions, not averments of fact, and thus no response is required. To the extent a response is deemed necessary, the College Defendants deny the allegations set forth in paragraph 24 in their entirety.

16.     The College Defendants deny the allegations set forth in paragraphs 26 and 27 of the Amended Complaint.

17.     The College Defendants admit in response to the allegations set forth in paragraph 28 of the Amended Complaint that defendant Huckle, well more than a decade ago, was employed by the Brighton Central School District as a middle school teacher, and as a coach of the Brighton cross country and track & field teams.

18.     The College Defendants deny the allegations set forth in paragraphs 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41 and 42 of the Amended Complaint.

19.     The College Defendants state in response to the allegations set forth in paragraph 43 of the Amended Complaint that Canisius maintained separate Men's and Women's Cross-Country and Track & Field Teams, which practiced together and which typically attended meets where both men and women competed, and that those teams were coached by defendant Huckle and others, but deny the balance of the allegations set forth in paragraph 43, including particularly the allegation that resources were not allocated equally between male and female athletes.

20.     The College Defendants deny the allegations set forth in paragraphs 44, 45 and 46 of the Amended Complaint.

21.     The College Defendants deny the allegations set forth in paragraph 47 of the Amended Complaint, except that they deny knowledge or information sufficient to form a belief as to the truth regarding plaintiff JD2's purported state of mind.

22.     The College Defendants state in response to the allegations set forth in paragraphs 48 and 56 of the Amended Complaint that personality profiles and performance visualization exercises were commonly used with athletes at Canisius, and elsewhere, as tools to improve performance, deny that plaintiffs JD2 or JD3 were singled out for such a profile, deny that defendant Huckle acted in a condescending manner toward JD2, deny that JD2 was told by defendant Huckle that she had an incompatible, rebellious or undesirable personality, and deny any impropriety whatsoever occurred in connection with either the personality profiling or the performance visualization exercises.

23.     The College Defendants admit in response to the allegations set forth in paragraph 49 of the Amended Complaint that plaintiffs JD1 and JD2 attended the National Catholic Cross-Country Invitational in or around September 2018, and state that defendant Huckle spoke to them outside the team bus, and outside the earshot or presence of the team. The College Defendants

deny that defendant Huckle "publicly chastised" them, deny any allegation or implication that defendant Huckle was critical of their same-sex relationship, and deny that his discussion with JD1 and JD2 was motivated by their sexual orientation, or any bias toward their sexual orientation. The College Defendants affirmatively state that defendant Huckle at that time expressed disapproval for the decision made by JD1 and JD2 to ignore a post-meet awards ceremony at which a teammate had received an award, and similar conduct which reflected their apparent desire to isolate themselves from the team. The College Defendants, finally, deny knowledge or information sufficient to form a belief as to JD1 and JD2's purported states of mind, and deny the balance of the allegations set forth in paragraph 49.

24.     The College Defendants state in response to the allegations set forth in paragraph 50 that all cross country athletes received similar apparel—typically, a racing kit, duffle, three shirts and two long-sleeved shirts. The College Defendants admit that, on occasion, the apparel provided to the Men's and Women's teams was not issued by the same manufacturer, due to such things as differing levels of merchandise availability or differing delivery times, but deny any averment or implication that one team received apparel that was inferior to the other, or that there were any inequities in the resource allocation between the Women's and Men's teams.

25.     The College Defendants deny the allegations set forth in paragraphs 51, 52, 53, 54 and 55 of the Amended Complaint.

26.     The College Defendants deny the allegations set forth in paragraph 57 of the Amended Complaint.

27.     The College Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 58, deny that there was a "general male

culture" on the teams, and deny any allegation or implication of discrimination or any other wrongful or inappropriate conduct by the College Defendants.

28.     The College Defendants deny the allegations as set forth in paragraph 59 of the Amended Complaint, and affirmatively note that reports made to Callisto are not forwarded to colleges and universities, as a matter of Callisto's corporate policy.

29.     The College Defendants deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 60 of the Amended Complaint, particularly including JD2's alleged observations and subjective impressions, and deny any allegation or implication of discrimination or any other wrongful or inappropriate conduct by the College Defendants.

30.     The College Defendants deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 61 of the Amended Complaint, particularly including alleged comments from defendant Glavin on plaintiffs' subjective impressions of the attitudes and opinions of unidentified members of the Men's team, and deny any allegation or implication of discrimination or any other wrongful or inappropriate conduct by the College Defendants.

31.     The College Defendants deny the allegations set forth in paragraphs 62, 63, 64, 65, 66, 67 and 68 of the Amended Complaint.

32.     The College Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 69 of the Amended Complaint.

33.     The College Defendants admit in response to the allegations set forth in paragraph 70 of the Amended Complaint that, in or around September 2017, plaintiff JD2 told an assistant coach of the Men's and Women's teams that she had been a victim of a sexual assault the prior year, but declined to identify her assailant or provide any particular details, requesting that her report instead remain confidential.

34.     The College Defendants admit in response to the allegations set forth in paragraphs 71 and 72 of the Amended Complaint that Dr. Terri Mangione and Assistant Athletic Director Tracy Murphy were apprised of the report of an alleged sexual assault in September 2017, but because JD2 had not identified an alleged assailant and because JD2 had specifically requested anonymity, neither Dr. Mangione nor AAD Murphy was provided plaintiff JD2's name, or the name of the alleged assailant.

35.     The College Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 73 of the Amended Complaint.

36.     The College Defendants deny the allegations set forth in paragraph 74 of the Amended Complaint.

37.     The College Defendants admit in response to the allegations set forth in paragraph 75 of the Amended Complaint that in or about February 2018, plaintiff JD2 reported to defendant Huckle that she had been the subject of non-consensual sexual relations in the fall of 2016, and also asked that this report be maintained confidential and anonymous.

38.     The College Defendants admit in response to the allegations set forth in paragraph 76 of the Amended Complaint that after receiving JD2's confidential report, defendant Huckle promptly notified Dean Terri Mangione of the confidential report and of JD2's request that it remain confidential and that the alleged assailant be maintained as anonymous, as is her right under applicable law; Dr. Mangione therefore did not seek, and defendant Huckle did not provide, the identity of either the reporting party or the alleged assailant.

39.     The College Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 77 of the Amended Complaint.

40.     The College Defendants deny the allegations set forth in paragraphs 78 and 79 of the Amended Complaint.

41.     The College Defendants admit in response to the allegations set forth in paragraph 80 of the Amended Complaint that in or about August 2018, plaintiff JD3 commenced studies at Canisius, and joined the Women's Cross Country Team.

42.     The College Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 81 and 82 of the Amended Complaint.

43.     The College Defendants admit in response to the allegations set forth in paragraphs 83 and 89 of the Amended Complaint that in or around September 2018, certain members of the Women's Cross Country team reported to defendant Huckle concerns regarding defendant Glavin's behavior and about his alleged assault of plaintiff JD3, but deny that "Defendant Huckle did nothing." Instead, this report was promptly passed along to Dean Mangione by Coach Huckle, meetings were held with the Women's team at which they were encouraged to voice their concerns and were encouraged, where appropriate, to submit complaints to the College's Title IX Office.

44.     The College Defendants deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 84 of the Amended Complaint.

45.     The College Defendants deny the allegations set forth in paragraph 85 of the Amended Complaint.

46.     The College Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 86 of the Amended Complaint, which relate to plaintiff JD3's state of mind in the fall of 2018.

47.     The College Defendants deny the allegations set forth in paragraphs 87 and 88 of the Amended Complaint, and further deny any allegation or implication of discrimination or any other wrongful or inappropriate conduct by the College Defendants.

48.     The College Defendants admit in response to the allegations set forth in paragraphs 90, 91 and 92 of the Amended Complaint that the alleged sexual misconduct by Defendant Glavin was the subject of a Title IX investigation, but deny that this investigation was "belated," or inconsistent with the rights and obligations of the parties under the law.

49.     The College Defendants state in response to the allegations set forth in paragraphs 93 and 94 that the College's actions with respect to the investigations undertaken were consistent with the rights and obligations of the parties under the law, and can neither admit nor deny the balance of the allegations set forth in these paragraphs due to the restrictions imposed by law on the public disclosure of student educational records without student consent, or waiver.

50.     The College Defendants can neither admit nor deny the allegations set forth in paragraphs 95 and 96 of the Amended Complaint due to the restrictions imposed by law on the public disclosure of student educational records without student consent, or waiver, but deny that defendant Glavin trained with the Men's Cross Country or Track & Field teams in violation of any prohibition against him doing so.

51.     The College Defendants deny the allegations set forth in paragraph 97 of the Amended Complaint.

52.     The College Defendants admit in response to the allegations set forth in paragraph 98 of the Amended Complaint that defendant Huckle met with JD1, JD2 and another student athlete in or around November 2018, but deny that he "pressured" any of them to resign from the Women's team, or otherwise acted inappropriately, and deny knowledge or information sufficient

10

to form a belief as to the mental impressions plaintiffs JD1 and JD2, or the third student, purportedly had.

53.     The College Defendants admit in response to the allegations set forth in paragraph 99 of the Amended Complaint that defendant Huckle met with JD2 in or around December 2018, but deny that he "chased" her or "screamed" at her, or otherwise acted inappropriately, and deny knowledge or information sufficient to form a belief as to the mental impressions plaintiff JD2 purportedly had at that time, or whether any student recorded any of the events.

54.     The College states in response to the allegations set forth in paragraph 100 of the Amended Complaint that a single e-mail, dated December 7, 2018, was sent to President John Hurley, which document will speak for itself, but denies that "there was no response and no action taken."

55.     The College Defendants admit in response to the allegations set forth in paragraph 101 of the Amended Complaint that plaintiff JD2 met with defendant Huckle and Assistant Athletic Director Lisa Liotta on or about December 10, 2018, but deny the characterization of the referenced meeting, or that plaintiffs JD1 and JD2 were accused of microaggressions at that meeting.

56.     The College Defendants deny the allegations set forth in paragraph 102 of the Amended Complaint, except they admit that plaintiff JD1 transferred from Canisius to another school.

57.     The College Defendants deny the allegations set forth in paragraph 103 of the Amended Complaint.

58.     The College Defendants state in response to the allegations set forth in paragraph 104 of the Amended Complaint that they deny knowledge or information sufficient to form a belief

as to plaintiff JD3's attendance at team parties, and deny the allegation that defendant Huckle

expected or required female team members to attend parties. The College Defendants admit that

defendant Huckle contacted plaintiff JD3's parents, but deny plaintiff's characterization of the

referenced contact.

59.     The College Defendants deny the allegations set forth in paragraph 105 of the

Amended Complaint.

60.     The College Defendants admit in response to the allegations set forth in paragraph

106 of the Amended Complaint that plaintiff JD3 sent an email to members of the Athletic

Department where she tendered her resignation from the Women's team, and refer to that email

for the best evidence of its content.

61.     The College Defendants admit in response to the allegations set forth in paragraph

107 of the Amended Complaint that plaintiff JD3 met with Connie Pileri in or around June 2019

to discuss plaintiff's resignation from the team.

62.     The College Defendants deny the allegations set forth in paragraph 108 of the

Amended Complaint.

63.     The College Defendants deny the allegations set forth in paragraph 109 of the

Amended Complaint, except that they deny knowledge or information sufficient to form a belief

as to which persons JD2 or JD3 saw while performing their service work, and deny knowledge or

information as to whether plaintiff JD2 was "harassed," except they affirmatively state that no

report of any alleged harassment was made by plaintiff JD2 to anyone at Canisius, at any time.

64.     The College Defendants deny knowledge or information sufficient to form a belief

as to the truth of the allegations set forth in paragraph 110 of the Amended Complaint, except they

deny any averment or attempt to imply that the College engaged in any improper, unlawful or

inappropriate conduct.

65.     The College Defendants state that the allegations set forth in paragraph 111 of the Amended Complaint constitute subjective statements of opinion and not averments of fact, to which no response is required; to the extent a response is deemed required, the College Defendants deny any allegation or implication of discrimination or any other wrongful or inappropriate conduct by the College Defendants.

66.     The College Defendants deny the allegations set forth in paragraphs 112 and 113 of the Amended Complaint.

67.     The College Defendants in response to the allegations set forth in paragraphs 114 and 115 of the Amended Complaint deny knowledge or information sufficient to form a belief as to plaintiff JD1's subjective state of mind, but deny that defendant Huckle instructed any student athletes not to "warn or inform the incoming freshmen of the sexual assault that had been perpetrated by defendant Glavin," deny plaintiff JD1's characterizations of the referenced communications, and deny any allegation or implication of discrimination or any other wrongful or inappropriate conduct by the College Defendants.

68.     The College Defendants deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs 116, 117, 118 and 119 of the Amended Complaint.

69.     The College Defendants deny the allegations set forth in paragraph 120 of the Amended Complaint.

70.     The College Defendants deny the allegation set forth in paragraph 121 of the Amended Complaint that Coach Huckle "forced" plaintiff JD3 into guided visualization sessions, and denies the characterization of events set forth in paragraph 121, but denies knowledge or information sufficient to form a belief as to plaintiff JD3's subjective state of mind, except to

affirmatively state that at no time did JD3 object to Coach Huckle, or anyone else, about her participation in these performance improvement exercises, and deny any allegation or implication of discrimination or any other wrongful or inappropriate conduct by the College Defendants.

71.     The College Defendants deny the allegations set forth in paragraph 122 of the Amended Complaint.

72.     The College Defendants deny knowledge or information sufficient to form a belief as so the truth of the allegations set forth in paragraph 123 of the Amended Complaint, and deny any allegation or implication of discrimination or any other wrongful or inappropriate conduct by the College Defendants.

73.     The College Defendants in response to the allegations set forth in paragraphs 124, 134, 139, 147, 150, 154, 158, 163, 168 and 174 repeat and reallege the denials and responses to the incorporated averments, as if those denials and responses had been set forth at length here.

74.     The College Defendants state that the allegations set forth in paragraph 125 of the Amended Complaint contain no averment of fact, and thus no response is required.

75.     The College Defendants deny the allegations set forth in paragraphs 126, 127, 128, 129, 130, 131 132 and 133 of the Amended Complaint, and further state that the Court has dismissed Count I against defendants Huckle and Maher (Dkt. 31 at 40).

76.     The College Defendants deny the allegations set forth in paragraphs 135, 136, 137 and 138 of the Amended Complaint, and further state that the Court has dismissed Count II against defendants Huckle and Maher (Dkt. 31 at 40).

77.     The College Defendants state that the allegations set forth in paragraph 140 of the Amended Complaint contain no averment of fact, and thus no response is required.

78.     The College Defendants deny the allegations set forth in paragraphs 141, 142, 143,

144, 145 and 146 of the Amended Complaint, state that plaintiffs have withdrawn the Title VII-based portions of Counts III, IV, VI, and IX (Dkt. 22 at 12), and further state that the Court has recognized the withdrawal of all Title VII claims (Dkt. 31 at 31, 40).

79.     The College Defendants deny the allegations set forth in paragraphs 148 and 149, state that plaintiffs have withdrawn the Title VII-based portions of Counts III, IV, VI, and IX (Dkt. 22 at 12), and further state that the Court has recognized the withdrawal of all Title VII claims (Dkt. 31 at 31, 40).

80.     The College Defendants state that the allegations set forth in paragraph 151 of the Amended Complaint contains no averment of fact, and thus no response is required.

81.     Plaintiffs deny the allegations set forth in paragraphs 152 and 153 of the Amended Complaint, and state that plaintiffs have withdrawn Count V of the Amended Complaint, and that the Court has recognized that withdrawal (Dkt. 31 at 41).

82.     The College Defendants state that the allegations set forth in paragraph 155 of the Amended Complaint contains no averment of fact, and thus no response is required.

83.     The College Defendants deny the allegations set forth in paragraphs 156 and 157, state that the Court has dismissed the entirety of Count VI, including the New York State Human Rights Law hostile work environment claims (Dkt. 31 at 40-41), and further state that plaintiffs have withdrawn all Title VII claims (Dkt. 22 at 12).

84.      The College Defendants state that the allegations set forth in paragraph 159 of the Amended Complaint contains no averment of fact, and thus no response is required.

85.     The College Defendants deny the allegations set forth in paragraphs 160, 161 and 162 of the Amended Complaint.

86.     The College Defendants deny the allegations set forth in paragraphs 164, 165, 166

and 167 of the Amended Complaint, and state that the Court has dismissed Count VIII (Dkt. 31 at 41).

87.    The College Defendants state that the allegations set forth in paragraph 169 of the Amended Complaint contains no averment of fact, and thus no response is required.

88.    The College Defendants deny the allegations set forth in paragraphs 170, 171, 172 and 173, state that plaintiffs withdrew all Title VII claims (Dkt. 22 at 12), and further state that the Court has recognized the withdrawal of all Title VII claims (Dkt. 31 at 31, 40).

89.    The College Defendants deny knowledge or information sufficient to form a belief as to the allegations set forth in paragraphs 175, 176 and 177 of the Amended Complaint, and state that the Court has dismissed Count X (Dkt. 31 at 41).

90.    The College Defendants deny the allegations set forth in paragraphs 178, 179, 180 and 181 of the Amended Complaint, and state that the Court has dismissed Count X (Dkt. 31 at 41).

91.    The College Defendants deny each other allegation, or portion thereof, not expressly addressed above.

## DEFENSES

92.    By asserting the instant defenses, the College Defendants do not assume any burdens of proof or persuasion not otherwise imposed by law.

### FIRST DEFENSE

93.    Plaintiffs fail to state a claim against the College and each individual defendant.

### SECOND DEFENSE

94.    Plaintiffs have failed to mitigate their alleged damages.

### THIRD DEFENSE

95.     Plaintiffs' claims are barred or limited by their own non-compliance, unlawful conduct, and/or the doctrines of equitable estoppel and/or laches.

### FOURTH DEFENSE

96.     Plaintiffs' claims are barred by the applicable statutes of limitation.

### FIFTH DEFENSE

97.     The continuing violation doctrine is inapplicable to the instant case.

### SIXTH DEFENSE

98.     Emotional distress damages are unavailable to plaintiffs asserting Title IX claims.

Dated: August 15, 2022                                  **WARD GREENBERG HELLER & REIDY LLP**


  /s/ Thomas S. D'Antonio

Thomas S. D'Antonio
Joshua M. Agins
Christine M. Naassana
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700
tdantonio@wardgreenberg.com
jagins@wardgreenberg.com
cnaassana@wardgreenberg.com
*Attorneys for defendants Canisius College,*
*Nathan Huckle, and William Maher*